FILED

UNITED STATES DISTRICT COURT          NOV 0 4 2005
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| KATHY J. MANZEY, | * | CIV 04-1001 |
| | * | |
| Plaintiff, | * | |
| | * | |
| -vs- | * | ORDER AND OPINION |
| | * | |
| HUMAN SERVICE AGENCY, | * | |
| | * | |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| JENA JOHNSON HALL, | * | CIV 04-1002 |
| | * | |
| Plaintiff, | * | |
| | * | |
| -vs- | * | |
| | * | |
| HUMAN SERVICE AGENCY, | * | |
| | * | |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

These consolidated cases involve claims of sexual harassment and retaliation.
These cases are referred to as Title VII cases filed pursuant to 42 U.S.C. § 2000e *et seq.*
Defendant Human Service Agency ("HSA") has filed motions for summary judgment
(Docs. 28 and 39). HSA has also requested oral argument (Doc. 45). This case does not
require oral argument, given the blizzard of paperwork already filed by all sides. I have
carefully read all documents and attachments filed by all parties.

Summary judgment is proper where there is no genuine issue as to any material
fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c),
Donaho v. FMC Corporation, 74 F.3d 894, 898 (8th Cir. 1996). The United States
Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment
> . . . against a party who fails to make a showing sufficient to establish the
> existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial. In such a situation, there can be
"no genuine issue as to any material fact", since a complete failure of proof
concerning an essential element of the non-moving party's case necessarily
renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265
(1986). "A material fact dispute is genuine if the evidence is sufficient to allow a
reasonable jury to return a verdict for the non-moving party." Landon v. Northwest
Airlines, Inc., 72 F.3d 620, 634 (8th Cir. 1995).

As a general proposition, under federal law, unlike South Dakota law, summary
judgment is a favored procedure. *Compare* Celotex v. Catrett, 477 U.S. at 327, 106 S.Ct.
at 2555 ("Summary judgment procedure is properly regarded not as a disfavored
procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which
are designed 'to secure the just, speedy and inexpensive determination of every action.'")
and Wilson v. Great Northern Ry. Co., 157 N.W.2d 19, 22 (S.D. 1968) ("Summary
judgment is generally not feasible in negligence cases").

In considering the motion for summary judgment, this court must view the facts in
the light most favorable to the nonmoving parties and give the nonmoving parties the
benefit of all reasonable inferences that can be drawn from the facts. Donaho v. FMC
Corporation, 74 F.3d 894, 897-898 (8th Cir. 1996). The court will follow that directive.

It is important to state, however, that summary judgments should seldom be
granted in discrimination cases, cases where inferences are often the basis of the claim,
and "summary judgment should not be granted unless the evidence could not support any
reasonable inference" of discrimination. Lynn v. Deaconess Med. Ctr.-West Campus,
160 F.3d 484, 486-87 (8th Cir. 1998). *See also* Gill v. Reorganized School Dist. R-6,
Festus, Mo., 32 F.3d 376, 377 (8th Cir. 1994) ("apply the standard with caution"). In
other words, in this case, could a jury reasonably conclude that HSA violated Title VII as
to these plaintiffs? Could a jury reasonably conclude that HSA cannot be shielded from
liability by any affirmative defense?

2

TIMELY FILING ISSUE

The first issue is whether there is any genuine issue of any material fact as to whether any notice of rights was ever provided to and received by the present plaintiffs. The one "dismissal and notice of rights" form was addressed to Kathie Manzey, 309 8th Street, NE, Watertown, SD 57201. The other "dismissal and notice of rights" form was addressed to Jena Johnson Hall, PO Box 615, Watertown, SD 57201. Both forms show a copy going to HSA with dates of mailing of October 7, 2003. There is nothing to indicate that either form was mailed to the attorney of record for the present plaintiffs although all concerned knew of the legal representation. There is apparently no doubt that, at least at one time if not presently, §6.4(b) of the EEOC Compliance Manual required that a copy of the right to sue letter be sent to the claimant's attorney. Stallworth v. Wells Fargo Armored Services Corp., 936 F.2d 522, 525, fn3, (11th Cir. 1991). "We conclude that the primary fault for the failed delivery in this case rests upon the EEOC because of its failure to mail a copy of the right-to-sue letter to Stallworth's attorney." Id. There is no certificate of mailing and no indication of who accomplished the mailing or by what process. The mailing date is simply a stamped date. Both notices specify that any lawsuit in federal court must be filed "WITHIN 90 DAYS of your receipt of this Notice . . ." There is nothing in the record to prove when or if the notices were received. They obviously would not have been "received" on the date of the claimed mailing in Denver. I recognize the general principle of the common law that documents regularly deposited into the United States mails are to be presumed to have been received. It is common knowledge these days that the Postal Service is not always reliable. I take judicial notice of the fact that my office has sent documents from Aberdeen, SD to Pierre, SD by so-called "priority mail" which documents did not arrive until five business days later. In addition, the present plaintiffs and their attorney have filed affidavits stating that they never received the notices until just a few days before commencing suit. There is no evidence to the contrary.

3

There is also nothing to indicate the manner of mailing. At one time, at a minimum, the apparent practice of the United States Equal Employment Opportunity Commission ("EEOC") was to send "right to sue" notices by certified mail. Johnson v. Martin, 810 F.Supp. 1114, 1115 (D.Colo. 1992). Plaintiffs are not to be penalized for any acts or omissions of the EEOC. Brezovski v. United States Postal Service, 905 F.2d 334 (10th Cir. 1990), and Gray v. Phillips Petroleum Co., 858 F.2d 610 (10th Cir. 1998). As a matter of law, there is nothing to justify a dismissal of this lawsuit or a summary judgment based upon the alleged failure to file within ninety days. At a minimum, any such issue of timely filing would be an issue of material fact as to which summary judgment would not be appropriate.

RETALIATION

Title VII makes it unlawful for an employer to discriminate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliatory discrimination under Title VII, each plaintiff must show as to her case that: (1) she engaged in statutorily protected activity; (2) an adverse employment action was taken against her; and (3) there is a causal connection between the two events. See Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (*en banc*) (*citing* Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir. 1997)).

An adverse employment action is exhibited by a *material* employment disadvantage, such as a change in salary, benefits, or responsibilities. *See* Williams v. City of Kansas City, MO, 223 F.3d 749, 753 (8th Cir. 2000) (*citing* Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 969 (8th Cir. 1999)). Plaintiffs contend that they were "fired" by their immediate supervisor, Susan Hall ("Hall"), in Hall's office and then directed by another HSA employee to leave their keys before leaving the HSA premises. HSA contends that Hall had no authority to "fire" plaintiffs but there is nothing to indicate that

4

plaintiffs would have even suspected that. They knew that Hall had previously fired another employee. Hall was their direct supervisor and reported in turn to Paul Mertz. ("Mertz"), the primary alleged culprit behind the alleged sexual and related misconduct. There is nothing to indicate that HSA ever urged plaintiffs to return to work after knowing that Hall had at least allegedly "fired" them. The detailed letter from plaintiffs' attorney to HSA should have been a red flag and a call to immediate corrective action by HSA. The letter did not constitute junk mail. Immediate prudent action could well have included an offer of some kind to immediately reinstate plaintiffs, at least during the course of the investigation. It would also have included instructions to all supervisors to not terminate the employment or in any way retaliate against plaintiffs. The attorney for plaintiffs had specifically suggested that in her letter received by HSA before plaintiffs left HSA. No such cautions were passed on by HSA higher level employees. Instead, HSA employed one or two attorneys to attempt to interview plaintiffs, perhaps without the presence of their attorney. One wonders how HSA could reasonably give much credence to statements or claims from Hall and Mertz, both of whom were apparently involved in filing false claims against the State of South Dakota and perhaps others. Perhaps this is why Mertz, both during and after his employment, was never interviewed by anyone on behalf of HSA about his alleged sexual harassment. Vice President Paul Mulholland ("Mulholland") also knew that Mertz had a past history of acting inappropriately and touching people without consent. Mulholland knew that plaintiffs and their attorney were concerned about keeping plaintiffs' jobs, not resigning. A question exists as to how Mulholland could then reasonably believe a few days later that plaintiffs had voluntarily quit their jobs. At a minimum, material issues of fact exist as to whether plaintiffs were "fired", resigned, or were constructively discharged. These are jury questions.

Questions of whether the terminations of employment were causally related to the EEO complaints are also material issues of fact. There is a very close temporal connection between the complaints made by at least one plaintiff (perhaps in writing) and

5

by both plaintiffs orally to HSA and as detailed in the rather conciliatory letter from their attorney to HSA and the allegedly adverse actions by HSA. "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." Scroggins v. University of Minnesota, 221 F.3d 1042, 1045 (8th Cir. 2000) (citing Kiel, 169 F.3d at 1136). More than temporal connections exist here, as shown by the record. Alleged statements by Hall and alleged veiled threats and general acts of indifference or distain by Mulholland, are easily sufficient to withstand the motion for summary judgment. Genuine issues of material fact exist as to all such matters.

We know also that a retaliatory discharge claim "is not conditioned on the merits of the underlying discrimination complaint." Salz v. Stellar Industries, Inc., 2004 WL 439231 at *7 (ND Iowa 2004).

There is no claim by HSA that plaintiffs were not performing all the essential functions of their jobs. HSA does not contend that it had any reason to discharge plaintiffs. They were apparently valuable employees who liked their jobs other than what they experienced from Hall and Mertz.

## SEXUAL HARASSMENT

The court finds that plaintiffs have established a prima facie case of sexual harassment by HSA. A reasonable jury could find that the HSA workplace was permeated with hostile and discriminatory treatment of plaintiffs as women. A reasonable jury could find that the alleged conduct was more than merely offensive, immature, or unprofessional, thus creating an abusive working environment for women. There is no doubt that the hostile work environment and the alleged misconduct came from and was condoned by supervisors at HSA. There is no doubt that plaintiffs are members of a protected group, that they were allegedly subjected to unwelcome harassment, and that the alleged harassment was sufficiently severe or pervasive as to affect a term of employment. They were allegedly discharged for making complaints and being "troublemakers." They were told by supervisors that, if they objected to any of the

6

working conditions at HSA, they could look for other employment since many people were waiting to take their jobs. The alleged conduct of the supervisors, if true, would permit a reasonable jury to determine that the conduct was extreme.

HSA contends that the misconduct is not always actionable unless motivated by sexual desire. Motivation is, of course, a question of fact. It would be impossible for plaintiffs to prove what was in the mind of either Hall or Mertz. I reject such a narrow interpretation of Title VII. In addition, there is no evidence that Hall or Mertz treated males in the same manner as they treated plaintiffs. As to any motivations of Hall or Mertz to treat females with general hostility, that again is a matter of intentions and mental states. There is certainly credible evidence of outright hostility by Hall towards plaintiffs. Mertz actually physically injured one of the plaintiffs. Intentions are best discernable by what people say and do. All these matters are genuine issues of material fact. There is also credible evidence to show that Hall was "signing on" and compounding the alleged misconduct by Mertz.

## AFFIRMATIVE DEFENSE

As to whether HSA is entitled to rely on the affirmative defense established by Faragher v. Boca Raton, 524 U.S. 775 (1998), and Burlington Indus. Inc. v. Ellerth, 524 U.S. 742 (1998), I do not believe that HSA had an effective harassment or discrimination policy in practice. They had no human resources director. This is despite the fact that the HSA policy manual directs employees to contact such person if not satisfied with lower level contacts with the immediate supervisor (York) or department manager (Mertz, the alleged sexual harrasser). The policy required written complaints if the immediate supervisors refuse to act. Here, Hall was the immediate supervisor and could easily be found to have been a willing participant in the misconduct. She could be found to have herself sexually harassed the plaintiffs. The second level supervisor was the prime mover in the harassment and sanctioning of it. He was never interviewed by anyone from HSA. He knew nothing about plaintiffs' claims of sexual harassment until his deposition was taken in this lawsuit. Nor did anyone on behalf of HSA interview York. Even in the face

of claimed written complaints, HSA did nothing. At a minimum, there is credible evidence that HSA also did not act in a timely or reasonable manner. At a minimum, there are genuine issues of material fact as to whether HSA exercised reasonable care to prevent and promptly correct sexually harassing behavior. There is no evidence that HSA in practice provided any preventative or corrective opportunities. There is credible evidence that HSA stonewalled all complaints. Having a policy means nothing when the policy is ignored or frustrated.

Whether plaintiffs or their attorney frustrated any legitimate effort by HSA to investigate and resolve the problems would also constitute genuine issues of material fact. Genuine issues of material fact also exist not only as to whether HSA properly investigated the complaints but also made intentional misleading and inaccurate statements to the EEOC.

HSA often assumes in its filings that plaintiffs voluntarily left their employment with HSA. Such question is very much in dispute. No such assumption will be made by the court. Whether or not it was reasonable for HSA to conclude that plaintiffs had voluntarily left their employment will be for the jury to decide. Frankly, it does not appear to the court that any such conclusion was reasonable under all the circumstances. Whether plaintiffs gave HSA a reasonable opportunity to correct the problems is also an issue of fact. Plaintiffs claim that HSA had stonewalled every complaint made previously. If plaintiffs' allegations are true, why would anyone conclude that further complaints would be fruitful? The conclusion would be to the contrary.

HSA apparently did not conduct or attempt to conduct an "exit interview" as to either plaintiff. The court is aware of another case against HSA pending in this court, namely Tschakert v. Human Services Agency, et al., CIV 05-1006. In that case, the evidence shows that HSA had in 2003 and used what is called an exit interview form. *See* Doc. 16-2 in that case which includes a copy of the exit interview form used by HSA. The forms could have easily been mailed to the present plaintiffs or their attorney with a request to complete the forms. HSA would then have known, if they were in doubt, what

8

the very specific claims and complaints of plaintiffs were as to their employment at HSA. Material issues of fact may well exist as to exit interview forms and practices of HSA when plaintiffs left their employment.

Questions about relief under South Dakota law and possibly a late filing are much ado about little. It makes no difference since this case will be proceeding to trial under federal law.

CONCLUSION

This is not a case for summary judgment. Genuine issues of material fact exist and the motions should be denied.

Now, therefore,

IT IS ORDERED, as follows:

1) The request for oral argument (Doc. 45) is denied.

2) The motions for summary judgment (Docs. 28 and 39) are denied.

Dated this _____ day of November, 2005.

BY THE COURT:


_____
CHARLES B. KORNMANN
United States District Judge


ATTEST:

JOSEPH HAAS, CLERK

BY:_____
        DEPUTY
    (SEAL)

the very specific claims and complaints of plaintiffs were as to their employment at HSA. Material issues of fact may well exist as to exit interview forms and practices of HSA when plaintiffs left their employment.

Questions about relief under South Dakota law and possibly a late filing are much ado about little. It makes no difference since this case will be proceeding to trial under federal law.

## CONCLUSION

This is not a case for summary judgment. Genuine issues of material fact exist and the motions should be denied.

Now, therefore,

IT IS ORDERED, as follows:

1) The request for oral argument (Doc. 45) is denied.

2) The motions for summary judgment (Docs. 28 and 39) are denied.

Dated this 4th day of November, 2005.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:

JOSEPH HAAS, CLERK

BY:
DEPUTY
(SEAL)

9